1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                  EASTERN DISTRICT OF CALIFORNIA

8

9  Albert Cecil Howard,                )   Case No. CV F-93-5726-REC
                                       )
10                Petitioner,          )   DEATH PENALTY CASE
                                       )
11     vs.                             )
                                       )   ORDER  RE:   FILING  AMENDED
12 Steven W. Ornoski, As Acting Warden )   PETITION AND HOLDING FEDERAL
   of San Quentin State Prison,        )   PROCEEDINGS IN ABEYANCE
13                                     )
                  Respondent.          )   DATE:     FEBRUARY 13, 2006
14 _____)   TIME:     1:30 p.m.
                                           COURTROOM ONE
15

16         This matter is before the Court on the motion of Petitioner

17  Albert Cecil Howard ("Howard") for an order permitting him to back-

18  file his First Amended Petition *nunc pro tunc* as of April 23, 1997,

19  and then to hold federal proceedings in abeyance.   The Honorable

20  Robert E. Coyle, presided over the proceedings.  Respondent Steven W.

21  Ornoski, as Acting Warden of San Quentin State Prison (the "Warden")

22  opposes  the  motion.    Howard  was  represented  at  the  hearing  by

23  Assistant  Federal  Defender  Joseph  Schlesinger;  the  Warden  was

24  represented by Deputy Attorney General Brian G. Smiley.  The hearing

25  originally  was  set  for  December  12,  2005.   Following  the  Court's

26  consideration of a request for a continuance filed by the Warden, the

27  hearing was continued to January 30, 2006.   The Warden filed his

28  opposition  to  the  motion  on  January  16,  2006  and  Howard  filed  his

reply on January 23, 2006.  The January 30, 2006 hearing was continued to February 13, 2006.

**I.    Procedural History.**

The pertinent procedural history for this case dates back over 15 years.  During direct appeal proceedings in the California Supreme Court, Howard filed his initial state habeas petition on June 22, 1990.  That petition was denied on December 11, 1991.[1]  On February 27, 1992, Howard's direct appeal proceedings were concluded when the California Supreme Court affirmed his murder conviction and death sentence.[2]

Howard initiated federal proceedings in this Court on October 25, 1993 with a request for appointment of counsel and a stay of execution of his sentence.  The Court appointed George Holt to represent Howard on March 4, 1994.  Because Mr. Holt was overwhelmed with the scope and breadth of representing Howard in these federal proceedings, on July 11, 1995, the California Appellate Project ("CAP"), was appointed co-counsel. On November 17, 1995, Mr. Holt substituted out and CAP, by Joseph Schlesinger, substituted in as sole counsel.  Finding that all files had been delivered to CAP as of April 15, 1996, the Court, on May 9, 1996, ordered CAP to file Howard's federal petition by October 24, 1996.

Four months after the Court established this due date, CAP, on September 18, 1996 requested authorization to conduct investigation

---

[1] The petition was denied without explanation.  In addition, in the same order, Howard's applications for an order to preserve testimony <u>and</u> for appointment of counsel to represent him on state habeas were denied.

[2] While the appellate decision affirmed Howard's murder conviction and death sentence, one of the special circumstances and two other convictions were set aside.

and consult with experts.  Over the Warden's objection, the Court considered and ultimately granted (in part) the funding request under seal.  The Court found, however, that the <u>timing</u> of the investigative funding application was unacceptable.  Because CAP failed to keep the Court apprised of its litigation efforts and the need for an extension to file the petition, the Court imposed a minimal amount of sanctions, $500.[3]  After the sanctions order was issued, CAP immediately applied for and was granted and extension to file Howard's petition, up to and including March 14, 1997.[4]  Contrary to the Warden's opposition papers in the present motion, at no time did the Court find dilatory tactics on the part of Howard or his counsel in the development of his federal claims.  Rather, it was the inconsiderate omission of keeping the Court apprised that provoked the sanctions.

Howard timely filed his original federal petition on March 14, 1997, and as part of his prayer for relief, requested that the federal proceedings be held in abeyance so he could pursue state remedies on additional federal claims discovered during preparation of the petition.  The original federal petition was reputed to contain only exhausted claims.  On April 10, 1997, the Warden opposed Howard's abeyance request because the additional, unexhausted claims had not been identified, and thus, the Warden could not evaluate whether they were cognizable federal claims.  Within two weeks, Howard responded by filing his state exhaustion petition in the California Supreme Court on April 23, 1997. This date is important, because it is the

---

[3] The amount set did not require a report to the California State Bar.

[4] In fact, the application for an extension of time requested up to and including February 14, 1997 to file the petition.  The Court provided an extra month, to March 14, 1997.

date on which Howard now claims that he could have filed a complete petition in federal court, which would have been comprised of his exhausted claims, as alleged in the original March 14, 1997 petition, and his newly discovered, unexhausted claims presented to the California Supreme Court.

On May 30, 1997 the Court ordered the federal proceedings held in abeyance until the California Supreme Court completed its review of the state exhaustion petition, a result the Warden conceded at the time was "a fair result." Based on the Warden's arguments, prior to entering that order, the Court evaluated the allegations in the state exhaustion petition for potential procedural default infirmities to determine whether proceeding with the state exhaustion process was futile. The Court specifically determined that the only basis for a state procedural default, if any, would be untimeliness.[5]   In addition, the Court observed that Howard made the necessary allegations in his state exhaustion petition to address the issue of timeliness under applicable state rules.[6] Because of these findings, the Court concluded that abeyance of federal proceedings was supported and that Howard's state exhaustion petition was not futile. Significantly, the Court also observed that under prevailing Ninth Circuit authority, any state procedural default predicated on

_____

[5] In making this finding, the Court discounted the potential of a procedural default based on failure to raise the claims in the first instance on direct appeal, *see In re Dixon*, 41 Cal. 2d 756, 760 (1953), or an attempt to raise a claim on state habeas that had previously been rejected on direct appeal, *see In re Waltreus*, 62 Cal.2d 218, 225 (1965).

[6] Howard alleged in his state exhaustion petition that his claims <u>were</u> timely because they were presented without substantial delay from discovery and that circumstances beyond his control prevented discovery of the claims earlier.

1   untimeliness would <u>not</u> be adequate to bar federal review because a

2   timeliness default prior to the decision in *In re Clark*, 5 Cal. 4th

3   750 (1993)[7] is not an adequate state ground to bar federal review on

4   the merits. *Morales v. Calderon*, 85 F.3d 1387, 1391 (9th Cir. 1996);

5   *Calderon v. United States Dist. Ct. (Bean)*, 96 F.3d 1126, 1131 (9th

6   Cir. 1996).[8]   The Court nonetheless abstained from concluding the

7   California Supreme Court actually <u>would</u> find an untimeliness default

8   since it would be improper for this Court to interfere with the state

9   process or usurp state jurisdiction.

10      On two occasions in late 1998 and early 1999, the Warden asked

11   that the Court vacate the May 30, 1997 abeyance order, arguing that

12   Howard's case was subject to the expedited provisions of Chapter 154

13   of Title 28.   The Court rejected these requests on the grounds that

14   Chapter 154 did not apply to Howard's case.[9]

15      The next pertinent order was issued on June 15, 1999, when Court

16   granted Howard's request that he be permitted to file his amended

17   federal petition containing previously and newly exhausted federal

18   claims within 30 days of completion of state exhaustion proceedings.

19      As of the present writing, Howard's state exhaustion petition is

20   still pending before the California Supreme Court.   An amendment to

21

22      [7] The *Clark* decision was issued on July 29, 1993.

23      [8] Under procedural default analysis jurisprudence, courts must
    look at the date on which a state petition <u>should have been filed</u> to
24   determine when the default occurred.   *Calderon v. United States Dist.
    Ct. (Hayes)*, 103 F.3d 72, 75 (9th Cir. 1996).   In Howard's case, his
25   state habeas petition was presumptively timely in 1990, when his
    original state habeas petition was filed.   Thus, his default under
26   California's articulated timeliness rules was before 1993, the year
    *Clark* was decided.

27      [9] The Court found that Chapter 154 did not apply to any of the
    cases pending in the Fresno Division of the Eastern District of
28   California in April 1999.

that petition was permitted by the state high court and thereafter filed on September 25, 2000.  This Court has reviewed that amendment, as well as the April 23, 1997 exhaustion petition in connection with the present motion.   The state exhaustion petition and amendment remain fully briefed, and as far as this Court can see, are ready for decision by the California Supreme Court.

## II.   Evolving Precedent Over the Past Nine Years.

In the nearly nine years since Howard filed his initial federal petition on March 14, 1997, and the date of this order, there have been some significant shifts in the controlling precedent regarding applicability of AEDPA, holding federal proceedings in abeyance, and statutory tolling of the statute of limitations under AEDPA.  The only pertinent authority that has not undergone a change over the years is the precedent governing *nunc pro tunc* filings.   Each of these applicable principles are discussed

### A.   Applicability of AEDPA.

At that time Howard filed his federal petition (March 14, 1997), the Court held federal proceedings in abeyance (May 30, 1997), and the Court established a due date for Howard's amended federal petition (June 15, 1999), caselaw dictated that because Howard's action was commenced <u>prior</u> to the effective date of the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), the provisions of AEDPA, including amendments to Chapter 153, 28 U.S.C. §§ 2241, *et. seq.*, were not applicable.[10]   *Calderon v. United States Dist. Ct. (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998).  This authority was abrogated a little

---

[10] Howard's federal habeas action was commenced on October 25, 1993 when he filed his request for appointment of counsel and a stay of execution of his death sentence.

over four years later when the United States Supreme Court issued *Woodford v. Garceau*, 538 U.S. 202 (2003), and held that it is not the mere commencement of the action, but rather, the filing of the petition (alleging actual claims for relief) which determines whether AEDPA does or does not apply to a pending action. Cases with petitions on file prior to April 24, 1996, the effective date of AEDPA, are <u>not</u> subject to the provisions of AEDPA. Cases with petitions filed subsequent to that date are. *See id*. at 207. Since Howard's initial federal petition was filed on March 14, 1997, nearly eleven months after the effective date of AEDPA, the provisions of AEDPA <u>do apply</u> to his case, notwithstanding the parties' and the Court's previous understanding to the contrary.

**B.   Holding Federal Proceedings in Abeyance.**

Prior to the issuance of *Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528 (2005), controlling precedent in this circuit precluded federal courts from holding in abeyance "mixed" petitions, that is petitions containing exhausted and unexhausted claims. *See Calderon v. United States District Court (Taylor)*, 134 F.3d 981, 985 (9th Cir. 1998). However, if the federal petition contained only fully exhausted claims, federal courts were at liberty to exercise discretion to hold federal proceedings in abeyance during state exhaustion. *See id*., at 987-88; *Greenawalt v. Stewart*, 105 F.3d 1268, 1274 (9th Cir. 1977). Thus, if a federal court were presented with a mixed petition, the unexhausted claims would have to be deleted or withdrawn by amendment before the petition could be held in abeyance. *Taylor*, 134 F.3d at 986. With respect to capital cases, this Court

1    followed the procedure of holding fully exhausted petitions in

2    abeyance.[11]

3         Under *Rhines*, a district court may now hold in abeyance a mixed

4    petition under limited circumstances. 544 U.S. at ___, 125 S. Ct. at

5    1534-35. To do so, first, the district court must determine if "there

6    was good cause for the petitioner's failure to exhaust his claims

7    first in state court." *Id*. at 1535. Second, the unexhausted claims

8    must not be "plainly meritless." *Id*. Finally, a mixed petition

9    "should not be stayed indefinitely," meaning, there should be specific

10   limits on the trip to state court and back to federal court. *Id*.

11        Unfortunately, the Court in *Rhines* did not define or give any

12   examples of what may constitute "good cause" for not presenting the

13   unexhausted claims in state court first (or earlier). Less than a

14   month later, however, the high Court did suggest one example of "good

15   cause." That is, "reasonable confusion about whether a state filing

16   would be timely." *Pace v. DiGluglielmo*, 544 U.S. ___, 125 S. Ct.

17   1807, 1813 (2005). After conducting independent research this Court

18   has failed to uncover any <u>published</u> Ninth Circuit opinion elucidating

19   this point further. Under *Pace*, it appears that a petitioner

20   uncertain about whether his filing of a state petition will be timely

21   is permitted to file a "protective" mixed petition in federal court

22   and then request abeyance of that petition under *Rhines. See Pace*,

23   544 U.S. at ___, 125 S. Ct. at 1813. At least one Ninth Circuit case,

24   ────────────────────────

25        [11] Petitioners were directed to file exhausted petitions and the
     Warden was given an opportunity to contest the exhaustion status of
26   the petitions filed. Once the exhaustion issue was resolved, the
     petitions were amended to delete any unexhausted claims, if necessary,
27   abeyance of federal proceedings was ordered. In no case did this
     Court ever dismiss a mixed petition filed in a capital case. To the
28   extent that either party references the practice of dismissing mixed
     capital habeas petitions, the discussion is irrelevant.

however, in an unpublished opinion, found the requisite good cause because his unexhausted claim otherwise would be barred by the one-year statute of limitations under 28 U.S.C. § 2244(d) unless he were to file the protective petition and have it held in abeyance during state exhaustion proceedings. *Barretto v. Giurbino*, 150 Fed.Appx.604 (9th Cir. 2005). The rules governing citation of unpublished cases prevents this Court from relying on *Barretto*, and in any event, the rationale contradicts the holding in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001)(holding that the limitations period is not tolled during pendency of a federal petition). *Walker* calls into question whether the inclusion of an unexhausted claims in a protective mixed petition under *Pace* and held in abeyance under *Rhines*, satisfies the federal statute of limitations. It may be that such claims are subject to a limitations bar where those claims are denied as untimely by the state court on state post-conviction review, and the state review is not completed during the limitation period. This discussion leads to a separate discussion of changes in the manner in which statutory tolling under § 2244(d)(2) applies to AEDPA cases.

### C. Statutory Tolling of the Statute of Limitations under AEDPA.

Under 28 U.S.C. § 2244(d)(2), the one-year statute of limitations is tolled during the pendency of a "properly filed" application for state post-conviction relief:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Prior to 2005, when *Pace* was decided, courts in the Ninth Circuit generally found that if a state post-conviction was filed within the

federal limitations period, the statute was tolled under § 2244(d)(2), no matter the reason for the state court denial.  Ninth Circuit courts specifically did not equate state procedural defaults with "improperly filed" state post-conviction petitions.  Thus, so long as a state petition was filed during the federal limitations period, statutory tolling was available.[12]  *See Dictado v. Ducharme*, 244 F.3d 724, 726-29 (9th Cir. 2001).  This construction of the statutory tolling provision was based on *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2001) which distinguished between time limits and procedural bars.[13]  Then, in *Pace*, the Supreme Court held that "time limits, no matter their form are 'filing' conditions" (which determine whether a state post-conviction petition is properly filed), and that "[w]hen a postconviction is untimely under state law, that is the end of the matter for purposes of § 2244(d)((2)."  *Pace*, 544 U.S. at ___, ___, 125 S. Ct. at 1812, 1814 (internal quotation and brackets omitted).  The phrase "no matter their form" appears to embrace procedural defaults based on untimeliness, notwithstanding the holding in *Bennett*.  The only rationale for distinguishing the two cases is that the procedural default in *Bennett* did not involve a timeliness bar.  *See* note 13, *supra*.

The *Pace* decision also applies the limitations bar on a claim-by-claim basis, meaning that some claims in a federal habeas petition may

---

[12] If and when the state court denial was based in whole or part on state procedural rules, the issue of procedural default in federal court was still an issue.

[13] The procedural bar at issue in *Bennett*, was based on two grounds:  the petitioner's presentation of some claims which were previously determined on direct appeal; and the petitioner's presentation of other claims which could have been raised on direct appeal, but were not. *Id*. at 7.

1   be time-barred, while others will be considered timely.  The Court

2   acknowledges that Howard takes a contrary view and argues that the

3   statute of limitations in 28 U.S.C. § 2244(d) applies to the

4   application as a whole and not on a claim-by-claim basis.  While this

5   position finds support in *Bennett*, 531 U.S. at 10 (holding that the

6   tolling provision of § 2244(d)(2) "refers only to 'properly filed'

7   applications and does not contain the peculiar suggestion that a

8   single application can be both 'properly filed' and not 'properly

9   filed'"), it contradicts *Pace*.  In *Pace*, the Court specifically

10  rejected the argument that since § 2244(d)(2) refers to "a properly

11  filed *application*," any condition applied on a claim-by-claim basis,

12  such as the state law there at issue, could not be a "condition to

13  filing" which determines whether a state petition is "properly filed."

14  *Pace*. 544 U.S. at ___- ___, 125 S. Ct. at 1813-14.[14]  The Supreme

15  Court's rejection of this argument is based on the fact that another

16  provision of § 2244, that is subsection (b) (pertaining to subsequent

17  petitions), requires inquiry into specific claims rather than to the

18  application as a whole.  *Id*.  The Supreme Court further noted that

19  even in § 2244(d)(2), the provision at issue, the statute refers to

20  a "properly filed application . . . with respect to the pertinent

21  judgment of claim."  *See id*.

22      The Court also acknowledges that Howard disputes *Pace* is

23  applicable to his case, or any California case, at all.  As he argued

24  at the hearing in this matter, the issue is currently before the Ninth

25

26

27
_____

28      [14] This Court follows the most recent Supreme Court precedent.

1   Circuit in *Bonner v. Carey*, 425 F.3d 1145 (9th Cir. 2005) on a

2   petition for rehearing and rehearing *en banc*.[15]

3        **D.    Utilizing *Nunc Pro Tunc* Amendments.**

4        The circumstances governing when a *nunc pro tunc* amendment should

5   be approved have not changed in the nine years Howard's exhaustion

6   petition has been pending before the California Supreme Court.    The

7   *nunc pro tunc* devise traditionally has been utilized as part of a

8   court's inherent power to correct court records in order to reflect

9   what actually occurred.   Invocation of this power is limited.

10        It does not imply the ability to alter the substance of
         that which actually transpired or to backdate events to
11        serve some other purpose. . . . [I]ts use is limited to
         making the record reflect what the district court actually
12        intended to do at an earlier date, but which it did not
         sufficiently express or did not accomplish due to some
13        error or inadvertence.

14   *United States v. Sumner*, 226 F.3d 1005, 1010 (9th Cir. 2000).

15   **III. Analysis.**

16        When the Court directed the Warden to file a responsive brief to

17   Howard's   present   motion,   it   instructed   him   to   address   the

18   applicability of *Pace* in the event some claims in Howard's state

19   exhaustion petition are denied as untimely.   In addition, the Court

20   directed the Warden to address two other subjects: whether the claims

21   alleged in the exhaustion petition relate back to the original federal

22   petition as described in *Mayle v. Feliz*, 544 U.S. ___, 125 S. Ct. 2562

23   (2005); and whether Howard might be entitled to equitable tolling of

24   the statute of limitations.   In reviewing the parties respective

25   ───────────────────

26        [15]  Without   oral   argument   or   the   benefit   of   briefing   on   the
     applicability of *Pace* to the case at hand, the Ninth Circuit panel
27   held that a California state procedural bar for untimeliness in a non-
     capital case was an "improperly filed" state post-conviction petition
28   which disqualified the petitioner from the benefits of statutory
     tolling under § 2244(d)(2).

briefs and the lengthy procedural history in this case, the Court determines that the relation back and equitable tolling issues are not properly before the Court and this juncture.  Accordingly, the Court declines to address them.  The *Pace* and *Rhines* cases, however, are relevant to the parties' respective contentions.  Howard requests that the Court back-file his amended federal petition as of April 23, 1997, and then hold the federal proceedings in abeyance.  The Warden contends there is no jurisdictional basis to utilize the *nunc pro tunc* procedure and that filing the amended petition must await completion of state exhaustion proceedings.  In the alternative, if the Court permits filing of the amended petition during state exhaustion proceedings, the Warden maintains that the Court should decline to hold federal proceedings in abeyance under *Rhines* because Howard has not been diligent in the development and prosecution of his claims.

> **A.   Back-Filing the Amended Petition to April 23, 1997, *Nunc Pro Tunc*.**

Howard argues that but for the now abrogated precedent, he would have filed a mixed petition in federal court and requested abeyance of the proceedings on April 23, 1997.  He maintains that *Rhines* now makes this possible.  He also argues that the Court has inherent power to modify the prior abeyance order and that the Court has the authority to permit the *nunc pro tunc* filing under its equity powers to prevent an injustice.  *See Mitchell v. Overman*, 103 U.S. 62, 64-65 (1881).

The Warden characterizes the application for the requested *nunc pro tunc* amendment as having the Court say something that is untrue.  He additionally argues that under traditional *nunc pro tunc* jurisprudence, the Court is without authority to apply the procedure.

1    He further argues, strenuously, that Howard has not prosecuted his

2    federal claims diligently, and therefore does not qualify for the

3    benefits of the Court's inherent equitable powers.

4         The Court declines to exercise its authority to permit Howard to

5    back-file his amended federal petition, *nunc pro tunc*, to April 23,

6    1997.  There was no inadvertence which caused the Court to proceed in

7    the manner it did in 1997.  *See Sumner*, 226 F.3d at 1010.  Rather, the

8    Court purposefully required Howard to file a fully federal exhausted

9    petition and identify his unexhausted claims before holding federal

10   proceedings in abeyance during state exhaustion.  The Court did

11   express what it intended to do in 1997.  The fact that the controlling

12   precedent has changed since that time does not entitle Howard to the

13   relief he presently seeks.  This is an entirely different type of

14   situation from that presented in *Mitchell*, 103 U.S. 62, on which

15   Howard relies.  In that case the lower (state) court entered a civil

16   action judgment on November 10, 1872, in favor of the plaintiff, which

17   was made effective as of October 16, 1868.  Back-dating the decree

18   followed from the fact that the state court held the matter under

19   submission for an undue length of time.  *Id*. at 63.  Unknown to the

20   court or the defense, the plaintiff died, intestate, on November 10,

21   1869, prior to entry of judgment, but after its effective date.  *Id*.

22   When the plaintiff's personal representative proceeded to enforce the

23   judgment in 1873, the defendant resisted because a judgment entered

24   on behalf of a deceased, intestate, plaintiff is void.  *Id*.  The

25   plaintiff's representative urged that the decree was valid because it

26   was <u>effective</u> prior to the plaintiff's death.  The Supreme Court

27   agreed because the delay in entering the judgment in the first place

28   was not due to "any cause attributable to the laches of the parties,"

but was for the court's "convenience, or [ ] the multiplicity or press of business, [or] the intricacy of the questions involved." *Id.* at 65. Taking an inordinate amount of time to reach a decision while a matter is under submission is a completely different concept than experiencing a change in precedent. In the present case, this Court was simply following Ninth Circuit precedent, and the Ninth Circuit was following Supreme Court precedent which wasn't revised until the Supreme Court decided *Rhines*.

Nor does the Court see the necessity of the *nunc pro tunc* devise in this case to prevent an injustice. Were the Court to grant the relief Howard seeks and the California Supreme Court then ruled some or all of the claims in the exhaustion petition were untimely, *Pace* might still preclude a finding of statutory tolling for those claims, because the federal limitations period is not tolled by filing a federal petition. *Walker*, 533 U.S. at 181-82. Although the Court is well-aware that the applicability of *Pace* is uncertain, Ninth Circuit authority exists concerning its applicability, *see Bonner*, 425 F.3d 1145, even though that authority is scheduled for *en banc* review. Further, the Court acknowledges that the adequacy of an untimeliness state default would have to be litigated at some point in the process, especially in light of the fact that the Court already observed that since Howard's default would be considered pre-*Clark*, prevailing authority dictates the default would not bar federal review. *See* May 30, 1997 order (quoting *Morales*, 85 F.3d at 1391, *Bean*, 96 F.3d at 1131, and *Hayes*, 103 F.3d at 75). On the other hand, if the California Supreme Court's denial of Howard's state exhaustion petition demonstrates that it was timely, statutory tolling would be available under § 2244(d)(2) for all claims. As the Supreme Court

1  stated in *Mitchell*, "[a] *nunc pro tunc* order should be granted or
2  refused, as justice may require in view of the circumstances of the
3  particular case."  103 U.S. at 65.  In the case of Howard, it will be
4  refused.

5      **B.   Filing the Amended Petition as of November 1, 2005.**

6      At the hearing the parties clarified their respective positions
7  as to whether Howard's amended petition can or should be filed during
8  state exhaustion, at all, even if the Court declines to enter the *nunc*
9  *pro tunc* relief Howard requests.  Howard argues that he is absolutely
10 entitled to file an amended petition during state exhaustion, and in
11 fact he actually filed it on November 1, 2005.  The Warden counters
12 that the filing of the amended petition must await completion of state
13 exhaustion proceedings because the (federal) case is on abeyance under
14 the regimen in practice pursuant to *Greenawalt*, 105 F.3d 1268 and
15 *Taylor*, 134 F.3d 981.  If the Court switches to the new procedure
16 under *Pace* and *Rhines*, the Warden argues, Howard will not be entitled
17 to abeyance because he cannot meet the *Rhines* good cause requirement
18 and is not entitled to benefit from the Court's equitable power
19 because he has not been diligent in pursuing his federal claims.

20      Although Howard is not entitled to a *nunc pro tunc* order back-
21 filing his amended petition to April 23, 1997, the Court finds that
22 under *Pace* and *Rhines*, he is authorized to file his amended petition
23 prior to completion of state exhaustion proceedings.  Both of these
24 cases permit a petitioner to file a mixed federal petition while s/he
25 pursues state remedies.  The Court can discern no rational basis for
26 limiting the filing of such protective petitions to the beginning of
27 the state exhaustion process, especially where, as here, the option
28 only became available within the last several months.  The Warden has

1  presented no authority to dissuade the Court from this course.  The

2  Court hereby approves the November 1, 2005 filing of Howard's amended

3  petition.  The only remaining question is abeyance.

4      **C.**  **Holding Federal Proceedings in Abeyance Pending Completion**

5          **of State Exhaustion Proceedings.**

6      The Warden's objection to holding Howard's amended petition in

7  abeyance under *Rhines* is that he has not been diligent in developing

8  his federal claims and pursuing his state remedies.  As a result, the

9  Warden claims Howard is disqualified outright under the third *Rhines*

10  requirement, he cannot establish the first *Rhines* requirement, and

11  finally, he is not entitled to equitable relief.  To reiterate, the

12  *Rhines* requirements for holding a mixed petition abeyance are:

13          1.  the district court must determine there was good cause

14              for the petitioner's failure to exhaust claims first

15              (or earlier) in state court;

16          2.  the unexhausted claims (or claims pending in the state

17              exhaustion petition) must not be plainly meritless;

18              and

19          3.  a mixed petition should not be stayed indefinitely,

20              but rather, there should be specific limits on the

21              trip to state court and back, and, "if a petitioner

22              engages in abusive litigation tactics or intentional

23              delay, the district court should not grant him a stay

24              at all."

25  544 U.S. at ___, 125 S. Ct. at 1535.

26      The Warden offers two separate but related circumstances which

27  he claims demonstrate Howard's claimed lack of diligence.  The first

28  is comprised of conduct by Howard's counsel which led this Court to

impose sanctions in September 1996.  The second is that the federal constitutional claims presented in the state exhaustion petition were not pursued in a timely manner.

Neither example is compelling.  In the first place, the diligence requirement under *Rhines* relates to filing delays between federal and state court, *see*, 544 U.S. at ___, 125 S. Ct. at 1535, a requirement not relevant to these proceedings at all.  As the procedural history of this case demonstrates, the state exhaustion petition is currently on file in the California Supreme Court, and the amended federal petition is on file in these proceedings.  There can and will be no delays as contemplated by *Rhines*.  Once the California Supreme Court denies post-conviction relief (if the California Supreme Court denies post-conviction relief),[16] federal proceedings can move ahead without any delay.

In the second place, on the merits, the Warden hasn't demonstrated lack of diligence.  With respect the September 1996 sanctions, the Court did not find lack of diligence in the development of Howard's federal claims.  Rather the statement that CAP had been "knowingly dilatory" was based on inconsiderate behavior, for not keeping the Court apprised of the CAP's progress in developing federal claims and maintaining the schedule for filing the federal petition by October 24, 1996.  Along with imposing minimal sanctions, the Court also granted CAP investigative funding for claim development and upon request, extended the due date for the federal petition by seven months.

---

[16] The Court does not express an opinion or prediction that state relief will or will not be denied.

1     The assertion that Howard was dilatory in presenting his claims
2 to the California Supreme Court is not for this Court to decide,
3 notwithstanding the Warden's strenuous argument.  Indeed it was this
4 very conclusion which compelled the Court in its May 30, 1997 order
5 to grant abeyance in the first place.  As summarized above, based upon
6 this Court's reading of the exhaustion petition, including the
7 allegations addressing the California timeliness standards, the Court
8 could not and would not conclude that the presentation of the
9 exhaustion petition to the California Supreme Court was futile.  In
10 both the April 23, 1997 exhaustion petition and the September 25, 2000
11 amendment, Howard takes great pains to explain how he discovered
12 claims after they would have been presumed timely pursuant to the
13 applicable California timeliness standards.  As alleged in these state
14 pleadings, part of the delay was attributable to efforts by
15 governmental agencies, including the Tulare City Council, the Tulare
16 County Counsel's Office, the Tulare County District Attorney's Office,
17 and the Attorney General's Office, to prevent Howard's attorneys from
18 gaining access to exculpatory records.  Those records are said to
19 concern extensive internal and external investigation of police
20 misconduct in Tulare County, specifically with respect to the officers
21 who investigated Howard's case.[17]  The other part of the delay is said
22 to be attributable to lack of investigative funds, which Howard's
23 litigation team finally were able to obtain in federal court during
24 development of his federal claims (including claims which had not been
25 exhausted).  A significant allegation of actual innocence is advanced
26 by virtue of expert opinion of a forensic pathologist who reviewed

27

28     [17] The Court expresses no opinion on whether Howard's allegations
can be or have been established.

trial evidence.   Claims of juror misconduct (supported by juror declarations) also were developed with the aid of available federal funds.

The Warden's review of the claims in the exhaustion petition produce a different conclusion.  He argues that factual bases for many claims were available long before April 23, 1997.  Analogizing to a Fifth Circuit case, *In re Wilson*, 433 F.3d 451 (5th Cir. 2005), the Warden is critical of Howard for waiting until just two days before the federal limitations period expired before filing his exhaustion petition.   In *Wilson*, the Fifth Circuit concluded the petitioner exceeded the limitations period when he returned to federal court after timely exhausting a newly discovered claim in state court. However, because counsel only left one day to accomplish the federal filing, and he failed to adhere to the rules for seeking permission to file a second federal habeas petition in federal court, the one day cushion was insufficient.   The only avenue open to the petitioner to defeat the statute of limitations was equitable tolling.   The Fifth Circuit held that the "actions of his counsel – particularly in waiting until the very last day of the limitations period to file his [state] application – appear to us to be more indicative of brinkmanship than of careful diligence."   *Id*. at 453.  Aside from the fact that this Court does not discern from these facts any strategic advantage from counsel's waiting until one day before the expiration of the limitations period, which would justify the accusation of "brinkmanship," the situation in *Wilson* is completely distinguishable from Howard's case.  First and foremost, in *Wilson*, it must understood that all players (counsel, the courts, the State, and the petitioner) knew when the federal statute limitations would expire, whereas here,

all of the players (counsel, the Court, the Warden, and Howard) believed that AEDPA did <u>not</u> apply, and hence there was no statute of limitations to worry about. Second, the precise issue under consideration in *Wilson* was equitable tolling, whereas here, the issue is holding Howard's amended federal petition in abeyance. The Warden's arguments are unpersuasive and thus, the third requirement of *Rhines*, that is, prompt state litigation and return to federal court, is satisfied.

Apart from finding satisfaction of the third *Rhines* requirement, the Court finds good cause to hold the amended petition in abeyance. That good cause is supplied by *Pace*, 544 U.S. ___, 125 S. Ct. 1807. "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file [a mixed petition] in federal court." *Id.* at ___, 125 S. Ct. at 1813. This Court already has found there is reasonable confusion about the timeliness standards pertinent to Howard's state exhaustion petition when it determined in the May 30, 1997 order that any pre-*Clark* untimeliness default is not adequate to bar federal review. The Court acknowledges and rejects the Warden's separate argument that because of the 1996 sanctions order, Howard wasn't confused about timeliness requirements for state claims. First, as already explained, the 1996 order was not based on lack of diligence in the development of federal claims and the exhaustion of state remedies. Second, even if the Court had found lack of diligence, there is no connection between failure to pursue claims and being confused about timeliness standards under California habeas rules.

Nor are there any equitable considerations which detract from permitting abeyance. The Warden's citation to *Pace*, 544 U.S. at ___-

1  ___, 125 S. Ct. at 1814-15, for elucidation about equitable principles

2  relates to the availability of equitable tolling of the statute of

3  limitations.  As the Court declines to enter any order about equitable

4  tolling, the Warden's argument is inapposite.  Abeyance under *Rhines*

5  for Howard's amended petition is authorized.

6  **IV.  Order.**

7       Howard's request for an order permitting him to back-file his

8  amended petition *nunc pro tunc* to April 23, 1997 is denied.  The Court

9  accepts the filing of the amended petition as of the date it was

10  provided to the Court, on November 1, 2005.  The Court further holds

11  in abeyance federal proceedings, except for the filing of quarterly

12  status reports as hereinafter provided.  During the pendency of state

13  exhaustion proceedings, Howard shall advise this Court of the progress

14  of state proceedings by filing status reports on a quarterly basis

15  beginning March 1, 2006, and continuing every three months thereafter

16  until the state proceedings are concluded.

17

18  IT IS SO ORDERED.

19

20  Dated:   February 27, 2006

                                     /s/ Robert E. Coyle
21                                    Robert E. Coyle
                                 United States District Judge
22

23

24

25

26

27

28